FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 25 2020

JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JASON T. HINTON                                                                       PLAINTIFF

VS.                                        CASE NO. 3:20-cv-381-DPM

TRINITYRAIL MAINTENANCE SERVICES, INC.                                DEFENDANT

## COMPLAINT

This case assigned to District Judge Marshall
and to Magistrate Judge Volpe

### Introduction

This is a civil rights action brought pursuant to 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658), in order to recover damages against the defendant for the unlawful employment practices that the plaintiff Jason T. Hinton, has been subjected to on account of his race as well as in retaliation for complaining about discriminatory treatment. This is also an action for declaratory judgment pursuant to 28 U.S.C.S. § 2201 to declare the rights and other legal relations between the parties. The plaintiff is also seeking equitable relief and injunctive relief as well.

### I.
### Jurisdiction

1.      Jurisdiction and venue of this Court are invoked pursuant to 28 U.S.C. §§ 1331, 1343, 1391, 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658)

2.      The unlawful employment practices alleged to have been committed against the plaintiff, were committed in the State of Arkansas, and in Craighead County, Arkansas.

## II.
## Parties

3. The plaintiff, Jason T. Hinton, is an African American male, and is a resident of the United States of America.

4. The Defendant TrinityRail Maintenance Services, Inc. is a foreign for-profit corporation, and is licensed to do business in the State of Arkansas operating as a railcar maintenance service company.

5. The defendant TrinityRail Maintenance Services, Inc. (hereinafter referred to as TrinityRail) is an employer within the meaning of 42 U.S.C.S. § 2000e (b), (g), and (h).

6. The Agent for Service of Process is C T Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

## III.
## Facts

7. The plaintiff was hired by TrinityRail in October 2014 as a Welder III.

8. Sometime in 2016 or 2017, the plaintiff was promoted to the position of Expert Welder.

9. TrinityRail is located in Jonesboro, Arkansas, and is in the business of providing maintenance on rail cars.

10. Throughout the plaintiff's career with the defendant, he has performed his job duties in a manner that was judged as "great" or "outstanding."

11. The defendant had relied upon the plaintiff to conduct training of new employees, as well as provide the new employees with orientation.

12. When rail cars were presented with defects, the defendant relied mostly upon the plaintiff to correct these defects.

13. The plaintiff let the defendant know that he was interested in moving into a Mechanical Lead Welder (Lead Welder) position.

14. In order to enhance his chances of becoming a Lead Welder, the plaintiff even agreed to go to a night shift position for a period of time based on the recommendation of Shannon Cartee, who served as the Superintendent.

15. In November 2018, the plaintiff applied for a Lead Welder position (**No. 1805406**).

16. However, on November 29, 2018, the plaintiff was informed that he did not get the position.

17. The Lead Welder position (**No. 1805406**) was awarded to a Caucasian male who was less qualified than the plaintiff.

18. The plaintiff was scheduled for an interview for a Lead Welder position on the date of November 30, 2018, to commence at 5:30 p.m..

19. However, on November 30, 2018, at 3:48 p.m., an email was sent to the plaintiff advising him that the Lead Welder – **1804790** had been awarded to some other employee.

20. Upon information and belief, this position was awarded to a Caucasian female employee, who was less qualified than the plaintiff.

21. In December 2018, the plaintiff applied for two (2) Lead Welder's positions (**Nos. 1806289 & 1806290**), and was told that he would get one of the positions, due to his outstanding work performance.

22. Also, in December 2018, the plaintiff applied for a Lead Welder's position (**No. 1805983**).

23. On December 19, 2018, the plaintiff was advised that he was not selected for the Lead Welder's position (**No. 1805983**).

24. Sean Bearden is a Caucasian male, and served as the plant manager during the time that the plaintiff was employed there.

25. Historically the defendant allowed the superintendent and/or the supervisor to make the recommendation for the Lead Welder's position.

26. The plaintiff was assured by his supervisor Lonnie Cole and the superintendent Shannon Cartee that he would get a Lead Welder position.

27. Upon information and belief, both Mr. Cartee and Mr. Cole recommended to the defendant's human resources department that the plaintiff should be promoted into a Lead Welder's position.

28. The above-mentioned recommendation by Mr. Cartee and Mr. Cole was made sometime in December 2018, after the plaintiff had interviewed for the position.

29. However, once Mr. Cartee and Mr. Cole recommended that the plaintiff should get the Lead Welder's position, through the Human Resources Department, Mr. Bearden demanded that a second round of interviews be conducted for the Lead Welder's position for which the plaintiff was recommended.

30. During the first interview, the plaintiff interviewed with Jeff Fiedor and Lonnie Cole in December 2018.

31. When the plaintiff discovered that he was not going to get the Lead Welder's position, and that he was being required to go through an unprecedented second interview, during early January 2019, he lodged a complaint through the defendant's hotline, contending that he was being discriminated against based on his race.

32. Shortly after lodging his complaint of discrimination with the defendant's hotline, the defendant started a campaign of retaliation against the plaintiff.

33. For instance, on or about January 31, 2019, the plaintiff was written up for sleeping on the job, which was not true.

34. The plaintiff participated in the second interview for the Lead Welder's position in February 2019.

35. The second interview was conducted by Preston Striker, who supervised the valve shop, and who knew nothing about welding.

36. On March 4, 2019, the plaintiff was advised that he did not get the Lead Welder's position (**No. 1806289**).

37. Upon information and belief, the defendant selected a Caucasian male employee, who was less qualified than the plaintiff.

38. Also, on April 10, 2019, the plaintiff was advised that he had not been selected for the Lead Welder's position (**No. 1806290**).

39. Upon information and belief, the defendant selected a Caucasian male employee, who was less qualified than the plaintiff.

40. In March 2019, the plaintiff applied for another Lead Welder's position, which again he was not selected.

41. Throughout the plaintiff's four (4) year employment with the defendant, he is believed to have applied for approximately twenty (20) lead welder's positions.

42. In May 2019, the plaintiff was issued a verbal warning.

43. In June 2019, the plaintiff was placed on a three (3) day suspension.

44. On July 5, 2019, the plaintiff filed a Charge of Discrimination (No. 493-2019-01230) alleging that he was the victim of race discrimination after being denied the lead welder's positions that he had applied for. The plaintiff also complained that in January 2019, the was

issued a write-up, and in May 2019, he was issued a verbal warning, and in June 2019, he was placed on a three (3) day suspension.

45. On July 28, 2019, the plaintiff was issued a written warning for allegedly not wearing safety gloves.

46. Then on July 31, 2019, the defendant accused the plaintiff of performing faulty brake work, which was allegedly performed by the plaintiff on July 18, 2019.

47. The plaintiff was terminated on August 1, 2019.

48. Prior to the plaintiff contacting the defendant's hotline in early January 2019 to complain about discrimination, he had never had any complaints about his work performance, nor had he been issued any type of disciplinary action.

49. In December 2017, the plaintiff was awarded a Certificate of Achievement for being recognized as "Employee of the Month."

50. In February 2018, the plaintiff was awarded a Certificate of Achievement for being recognized as "Employee of the Month."

51. After filing his complaint of discrimination with the defendant's employee hotline, the plaintiff met with an African American female employee from South Carolina sometime during either February or March 2019 to discuss his complaint.

IV.
Race Discrimination

52. The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 51, supra., inclusive as though set forth herein word for word.

53. The plaintiff applied for several Lead Welder positions throughout his career with the defendant.

54. Although the plaintiff was well qualified for the Lead Welder's position, he was not selected for the Lead Welder's position on several occasions.

55. In November 2018, the plaintiff applied for the Mechanical Lead Welder's position (**No. 1804790**).

56. The plaintiff also applied for the Lead Welder's positions (**No. 1806289 & 1806290**) in December 2018.

57. The plaintiff also applied for the Lead Welder's position (No. 1805983) in or about December 2018.

58. The plaintiff's supervisor and superintendent recommended him for the lead welder's positions based on his qualifications and experience.

59. Although the plaintiff was the most qualified person for the lead welder's positions as mentioned herein, the defendant opted instead to chose Caucasian employees who were less qualified than the plaintiff.

60. Also, as a further act of discrimination, the plant manager required the plaintiff to re-interview for the Lead Welder's position, after he was recommended for this position by the plaintiff's supervisor and superintendent.

61. Despite the fact that the plaintiff was the most qualified candidate for the lead welder's position, he was not selected on account of his race, in violation of 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658).

V.
Retaliation

62. The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 61, supra., inclusive as though set forth herein word for word.

63. When the plaintiff found out that he was being required to re-interview for the lead welder position, despite being recommended by both his supervisor and superintendent, the plaintiff filed an internal complaint of discrimination with the defendant's human resources department by way of the company's hotline.

64. On July 5, 2019, the plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), contending that he was the victim of discrimination based on race, when he was not selected for the lead welder positions in December 2018, February 2019, and in March 2019. The plaintiff also alleged in the Charge of Discrimination with the EEOC that he was being disciplined on account of his race as well.

65. As a result of the plaintiff complaining about discrimination with the defendant's human resources department in January 2019, the plaintiff was denied the lead welder's positions that were awarded in March and April 2019.

66. In January 2019, the plaintiff was further retaliated against after complaining about discrimination, when he was issued a write-up.

67. As a further act of retaliation, the plaintiff issued a verbal warning, and in June 2019, the plaintiff was placed on a three (3) day unpaid suspension.

68. The above-mentioned acts of retaliation were committed against the plaintiff in violation of 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658).

69. After the plaintiff filed his Charge of Discrimination with the EEOC, he was scrutinized more closely than other employees by management officials.

70. On July 28, 2019, the plaintiff was issued a written warning for failing to wear safety gloves.

71. Other employees had committed similar offenses, yet they were not punished to the degree that the plaintiff was punished.

72. The plaintiff was terminated on August 1, 2019.

73. The plaintiff was terminated from his place of employment, and subjected to further acts of discipline due to the plaintiff complaining about discriminatory practices, in violation of 42 U.S.C.S. § 1981 (as amended by the Civil Rights Act of 1991, which is codified at 28 U.S.C.S. § 1658).

74. Due to the above-mentioned acts of discrimination, the plaintiff has suffered mental anguish, embarrassment, lost wages, all in a manner to be proven at trial.

75. Furthermore, the defendant's acts of discriminating against the plaintiff due to his race were done in reckless disregard to the plaintiff's federally protected rights, that an award of punitive damages is warranted.

76. Also, due to the defendant's retaliatory conduct, and their reckless disregard for the plaintiff's federally protected rights, an award of punitive damages is warranted.

## JURY DEMAND

77. The plaintiff requests that this matter be tried before a fair and impartial jury of twelve (12) persons.

THEREFORE, the plaintiff is seeking the following relief for the above described unlawful employment practices:

a. declare that the plaintiff has been subjected to unlawful discriminatory practices;

b. reinstatement and back pay;

c. compensatory damages, as well as punitive damages;

d. the cost of prosecuting this action;

e.   attorney's fees;

f.   and for all other just, equitable, and legal relief.

Respectfully submitted,

PORTER LAW FIRM  
The Catlett-Prien Tower Building  
323 Center Street, Suite 1035  
Little Rock, Arkansas 72201  
Telephone: 501-244-8200  
Facsimile: 501-372-5567  
Email: Aporte5640@aol.com

By: _____  
Austin Porter Jr., No. 86145

Dated this 25th day of November 2020.